LINK TO DOCS. # 45 & 46  / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):            Attorneys Present for Defendant(s):

Not Present                                                   Not Present

**Proceedings:**      **(In Chambers) Order GRANTING Defendants' motion for partial summary judgment; and DENYING Plaintiffs' motion for partial summary judgment**

Pending before the Court are Plaintiffs' and Defendants' cross-motions for partial summary judgment. A hearing on the motion was held on January 3, 2011. After considering the moving and opposing papers and arguments presented at the hearing, the Court GRANTS Defendants' motion for partial summary judgment and DENIES Plaintiffs' motion for partial summary judgment.

I.     Background

This action arises from an incident at a warehouse in downtown Los Angeles (the "warehouse") involving Plaintiffs James Duff Lyall, Javier Cortez, D'Angelo Jones, Magnolia Becerra, Sasha Costanza-Chock, Joseph Holliday, and Benjamin Wood (collectively, "Plaintiffs") and two law enforcement officers, which culminated in the arrest of one plaintiff, and an investigatory detention, including a pat-down search, of the other six.

On the night of November 16, 2008, Plaintiffs attended a musical and artistic event at the warehouse.  The event was held to raise money for the upcoming Los Angeles Anarchist Book Fair.  *Plaintiffs' Statement of Uncontroverted Facts ("PUF")* ¶ 12.  At about 9:00 pm, Defendants LAPD Officers Cho and Cervantes arrived on the scene.  The officers were investigating an alleged beer theft from a nearby convenience store which had taken place earlier

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

that evening. *PUF* ¶¶ 24-26. The theft suspects were described as "six male Hispanic juveniles, [wearing] 'rocker type' clothing." *Id.* Having seen a vehicle with a license plate matching that of the suspect's vehicle parked around the corner of the warehouse, and noticing people in "rocker-type" clothing entering the warehouse, the officers decided to approach the warehouse. *PUF* ¶ 29; *Cervantes IA Interview*, Ex. N, 6:8-25.

At the time the officers arrived, approximately 100 persons were inside the warehouse, though the bands were still setting up and the event had not "officially" begun. *PUF* ¶ 23; *Compl.* ¶¶ 1, 18; *Defendants' Statement of Uncontroverted Facts ("DUF")* ¶ 22. The warehouse door was ajar, but the officers soon encountered Plaintiff Cortez ("Cortez") who was standing in the doorway. *DUF* ¶¶ 24-25; *PUF* ¶¶ 37-38. The officers explained the purpose of their investigation, but Cortez refused to let the officers enter the premises, telling them that it was a private party and they needed a warrant to enter. *PUF* ¶ 41.[1] He forcefully attempted to shut the door, but Officer Cervantes pushed it open, followed Cortez into the warehouse, and eventually took him into custody.[2] *PUF* ¶ 45; *DUF* ¶ 26. Defendants assert that a "crowd" had gathered around Cortez, and followed the officers as they escorted Cortez out of the warehouse, "yelling and raising their fists at the officers." *Defendant's Statement of Genuine Issues, Including Defendants' Additional Facts ("SGI")* ¶ 123.

By this time, more officers had arrived on the scene. *PUF* ¶¶ 55-56. After Cortez had been handcuffed and placed in the back of a police car, Defendant Sergeant Ross, the acting supervisor for Officers Cho and Cervantes, ordered all of the event's attendees out of the warehouse. *PUF* ¶¶ 59-63. Once outside, the attendees were all subjected to a pat-down search to check for weapons at Sergeant Ross's direction. *PUF* ¶¶ 79-84. Plaintiffs assert they were then "forced to submit to a field line-up" in connection with the alleged beer theft,[3] *PUF* ¶¶ 75,

---

[1] Defendants dispute that Cortez said they needed a warrant to enter. *Defendants' Statement of Genuine Issues, Including Additional Facts* ¶ 41; *Cervantes IA Interview,* Ex. N 7:20-8:2.
[2] Cortez was subsequently convicted of a violation of Cal. Penal Code § 415 (disturbing the peace) as a result of this interaction. *See Defendants' Request for Judicial Notice in support of Defendants' Motion for Partial Summary Judgment,* Ex. 1; *DUF* ¶ 27.
[3] Defendants dispute this, although they acknowledge a field "show-up" was conducted. *Defendants' SGI* ¶¶ 75, 77, 79.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

79, even though none of six matched the description of the theft suspects.[4] *PUF* ¶ 96. Multiple attendees were taken into custody for allegedly violating Cal. Penal Code § 148 (A)(1) (resistance/interference with a police officer) as a result of this encounter, including Plaintiffs Cortez and Holliday who were later formally charged.[5] *PUF* ¶¶ 104, 107.

Subsequently, on October 9, 2009, Plaintiffs filed a class action complaint (the "Complaint"), naming as defendants the City of Los Angeles, the Los Angeles Police Department, Police Chief William Bratton, and individual police officers David Ross, Johnny Cervantes, Nicholas Cho, Angel Guerra, and Jinho Kang (collectively, "Defendants"). The Complaint asserts two causes of action under 42 U.S.C. § 1983: one for violations of Plaintiffs' First Amendment rights to freedom of speech and association, and a second alleging violations of Plaintiffs' Fourth Amendment rights against unreasonable searches and seizures. In addition, the Complaint asserted a third cause of action under Cal. Civ. Code § 52.1(b) for interference with Plaintiffs' federal and state constitutional rights by threats, intimidation, or coercion.

Defendants moved for partial summary judgment on November 23, 2010. Defendants' motion argues the following: (1) the evidence against Defendants Police Chief Bratton, Officer Kang, and Officer Guerra is insufficient to proceed with any of Plaintiffs' claims; (2) Plaintiff Javier Cortez's conviction for disturbing the peace under Cal. Civ. Code § 415 precludes him from challenging the contemporaneous search or detention, and thus bars his second and third causes of action (under 42 U.S.C. § 1983 and Cal. Civ. Code § 52.1); and (3) that all Plaintiffs' Fourth Amendment challenges based on the warrantless entry into the warehouse fail because no Plaintiff had a reasonable expectation of privacy. *Defendants' Notice of Mot.* 2:4-13.

Plaintiffs also filed a motion with the Court seeking summary adjudication of the following claims: (1) that the LAPD Officers' warrantless entry into the warehouse violated the federal and state constitution; (2) that the LAPD Officers' pat-down searches and seizures of Plaintiffs including were without reasonable suspicion or probable cause; (3) that the LAPD

---

[4] Plaintiff Cortez remained in the back of the police car under Defendant Cho's supervision; he was not part of the field line-up. *PUF* ¶ 77.

[5] The charge against Plaintiff's Holliday was ultimately dropped due to the City Attorney's decision not to prosecute. Plaintiff Cortez's offense under § 148 (resistance/interference with a police officer) was dropped when he pled no contest to an infraction violation of Cal. Penal Code § 415 (disturbing the peace). *PUF* ¶ 107 (Dkt. # 48 (Nov. 30, 2010)); *Flynn Decl.* ¶ 27.

**LINK TO DOCS. # 45 & 46 / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

Officers' entry into the artists' space and seizures of Plaintiffs were pursuant to a custom, policy and/or practice of the City of Los Angeles and the LAPD Los Angeles Police Department; and (4) that Plaintiffs are entitled to recover from defendants City of Los Angeles and the Los Angeles Police Department damages proximately caused by the officers' violations of Plaintiffs' state and federal constitutional rights. *Plaintiffs' Notice of Mot.* 2-1:18.

II.     Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading." *See id.* at 248, 257 (citations omitted) .

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 248, 250-51.

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

III.    Discussion

  A.     Plaintiffs' Section 1983 Cause of Action for Violations of Plaintiffs' Fourth
     Amendment Rights

**LINK TO DOCS. # 45 & 46 / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

Plaintiffs' second cause of action in this lawsuit is a claim under 42 U.S.C. § 1983 ("Section 1983") based on Defendants' alleged violation of the Fourth Amendment right against unlawful searches and seizures.[6] *Compl.* ¶¶ 33-35; U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). This cause of action is predicated on multiple separate incidents, each of which Plaintiffs contend independently suffices to establish a constitutional violation. *Id.* Defendants now seek summary adjudication on three specific issues relating to Plaintiffs' Fourth Amendment claim. Plaintiffs also seek summary adjudication on four issues presented by their second and third causes of action. In evaluating the parties' cross-motions for partial summary judgment, the Court will proceed by analyzing the discrete issues raised in both sets of moving papers in the order that factual events underlying such issues unfolded.

      1.      <u>Warrantless Entry Claim</u>

Plaintiffs' first argument in moving for partial summary judgment is that Defendants' warrantless entry into the warehouse violated Plaintiffs Javier Cortez's ("Cortez") and Joseph Holliday's ("Holliday") federal and state constitutional rights against unreasonable search and seizure. *Plaintiffs' Mot.* 7:23-8:22. Defendants contest this, arguing in opposition that that the officers' initial entry into the warehouse was justified by exigent circumstances (namely, Cortez's refusal to allow the officers in the warehouse to investigate the alleged theft and his subsequent attempt to slam the door). *Defendants' Opp'n* 11:6-21; *Defendants' SGI* ¶ 122 (*citing Cervantes IA Interview, Flynn Decl.* Ex. N 7:7-13; 7:20-8:9). Further, Defendants contend that because none of the seven plaintiffs had a reasonable expectation of privacy in the warehouse on the night of the incident, none have "standing" to challenge the officers' warrantless entry on Fourth Amendment grounds.

            a.      *Whether Plaintiffs Have Standing Under Federal and State Law to Challenge the Officers' Warrantless Entry into the Warehouse*

---

[6] The Court notes that neither parties' motion for summary adjudication addressed Plaintiffs' first cause of action, a Section 1983 claim based on Defendants' alleged violation of Plaintiffs' First Amendment rights.

LINK TO DOCS. # 45 & 46 / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

  A plaintiff claiming that his or her Fourth Amendment rights were violated must, as a threshold matter, demonstrate a capacity to challenge the governmental conduct at issue by showing that he or she had a "legitimate expectation of privacy" in the place searched or the thing seized. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). A person's expectation of privacy is deemed legitimate if it is "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Absent a showing of reasonable expectation of privacy, governmental conduct is not considered a "search" within the meaning of the Fourth Amendment. *See U.S. v. Gonzalez,* 328 F.3d 543, 546 (9th Cir. 2003) (*citing Kyllo v. United States,* 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ("[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.")).

  Although "[n]o single factor determines whether an individual legitimately may claim under the Fourth Amendment that a place should be free of warrantless government intrusion," *U.S. v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007), courts facing this question have afforded weight to factors such as the claimant's possessory interest in the property searched or seized, *see, e.g., United States v. Broadhurst,* 805 F.2d 849, 852 n.2 (9th Cir. 1986); the presence or absence of the claimant's right to exclude others from access, *see, e.g., U.S. v. Bautista,* 362 F.3d 584, 589 (9th Cir. 2004); and measures taken by the claimant to insure privacy, *see Katz,* 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

  Another factor courts consider is "where [the plaintiffs] are," *Carter,* 525 U.S. at 88, specifically, whether the property being searched is used for commercial or residential purposes. *Id.* at 90. Although an individual may have a legitimate expectation of privacy in a commercial area, *see United States v. Silva,* 247 F.3d 1051, 1055 (9th Cir. 2001) (citation omitted), "that legitimate expectation is less than one would have while on residential property." *Gonzalez*, 328 F.3d at 547 (*citing New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987)); *see also Carter,* 525 U.S. at 90-91 (holding that two drug dealers did not have a legitimate expectation of privacy in an apartment set up for drug manufacturing, where the defendants occupied the apartment for two-and-one-half hours for the purpose of packaging drugs for resale, and "paid" the lessee an eighth of an ounce of cocaine to use the apartment because they were present solely "for a business transaction").

**LINK TO DOCS. # 45 & 46   / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

      Based on the undisputed facts in this case, the Court finds that Plaintiffs lacked a legitimate expectation of privacy in the warehouse at the time of the officers' entry.  The parties agree that the warehouse was not used for residential purposes, but rather was used as "an artistic work space."  *Haglund Depo.* 13:11-14; *cf. Gonzalez*, 328 F.3d at 547.  Despite the fact that the warehouse lease agreement prohibited "public gatherings," *see id.* 87:23-88:3, Exs. 2, 4-5, the event held in the warehouse on November 16, 2008 was widely publicized.  Plaintiff D'Angelo Jones, for instance, created a flyer advertising the event and posted it to his MySpace page, thereby reaching approximately 1,000 users.  *Jones Depo.* 14:2-12, 15:25-16:11, 32:15-24, Ex. 46 (the flyer).  Plaintiff Benjamin Wood posted Jones' flyer on a MySpace account created for the "Book Fair Collective," and disseminated it as a bulletin to approximately 300 MySpace users who were "friends" of the Book Fair Collective page.  *Woods Depo.* 24:5-9, 14-15.  And Plaintiff Becerra learned about the Nov. 16, 2008 Anarchist Book Fair Fundraiser at the warehouse when she was handed a paper copy of the flyer by Plaintiff Cortez, who was passing out a "stack of them" in MacArthur Park.  *Becerra Depo.* 19:2-12.

      The public nature of the event is further substantiated by evidence regarding what Officers Cho and Cervantes encountered upon arriving at the warehouse that night.  For instance, approximately 100 persons were in attendance at 9:00 p.m., when the officers arrived.  *Compl.* ¶¶ 1, 18; *PUF* ¶ 23; *Cortez Depo.* 69:3-8.  The officers saw that the padlock to the front door was unlocked, and the door was open as people arrived.  *Lyall Depo.* 23:3-10; *Holliday Depo.* at 52:17-53:17, 62:14-19.

      Moreover, there is no evidence to suggest that Plaintiffs Lyall, Becerra, Wood, Costanza-Chock, and Jones had even a remote possessory interest, or any other connection to the warehouse that might reasonably confer an expectation of privacy.  At most, the evidence shows that these plaintiffs were legitimately on the premises.  This, however, is insufficient to establish standing to challenge the warrantless entry on Fourth Amendment grounds.  *See, e.g., U.S. v. Armenta*, 69 F.3d 304, 309 (9th Cir. 1995) (holding an overnight guest lacked standing to challenge the search of the house at which he was staying; there was no indicia that he was even temporarily living or staying there, and he took no precautions to ensure privacy in the house); *U.S. v. Reyes-Bosque*, 596 F.3d 1017, 1027 (9th Cir. 2010) (defendant lacked standing to challenge the search of a house at which he was allegedly staying where the evidence indicated that the defendant was not an overnight guest).

LINK TO DOCS. # 45 & 46 / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

  As to Plaintiffs Cortez and Holliday, Plaintiffs argue that (1) Plaintiff Cortez had a reasonable expectation of privacy in the warehouse because he "had the tenants' permission to use the artist space for the fundraiser and was acting as [non-party ] Mr. Haglund's [(the tenant)] agent[,]" *Plaintiff's Mot.* 8:10-12; and (2) Plaintiff Holliday had a reasonable expectation of privacy because he was a "co-tenant" and possessed a key to the warehouse. *Id.* 8:10. These assertions, however, simply do not suffice to establish that either plaintiff had a legitimate expectation of privacy.

  First, with respect to Cortez, Plaintiff's contention that mere permission to use a space to host a fundraiser with live bands and potentially hundreds of attendees somehow creates a reasonable expectation of privacy in the space contravenes decades of caselaw. *See Rakas*, 439 U.S. at 142-148 (standing to challenge governmental conduct on Fourth Amendment grounds requires more than being "legitimately on [the] premises"); *see also Andree v. Ashland County*, 818 F.2d 1306 (7th Cir. 1987) (promoters of outdoor rock concert on private property had no reasonable expectation of privacy and were not subject to a "search" violating the Fourth Amendment by deputies' presence at a concert open to the general public).

  Second, as regarding Holliday, evidence in the record contradicts Plaintiffs' assertion that Holliday was a co-tenant along with non-party Joshua Haglund, the lessee of the warehouse space. *PUF* ¶ 7. Mr. Haglund's name – and his name alone – appears on the rental agreement. *Haglund Depo* Ex. 3. However, even assuming that Holliday was, in fact, a co-tenant of the warehouse, because he did not live there and the event was essentially open to the public, it is Holliday's limited possessory interest would not have conferred a reasonable expectation of privacy in the space on the night in question. *Compare U.S. v. Paopao*, 469 F.3d 760, 764 (9th Cir. 2006) (holding that a defendant lacked Fourth Amendment standing to challenge search of an apartment used as an illegal gambling room where nobody lived in the apartment, and defendant's presence in room was for commercial and possibly criminal purpose) *with United States v. Davis,* 932 F.2d 752, 756 (9th Cir. 1991) (finding a legitimate expectation of privacy existed where the guest had previously lived in the apartment, kept a key, stored his personal belongs there, and continued to pay a portion of the rent). Further, the facts at hand indicate that, contrary to Plaintiffs' claim, this case is not akin to *Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L.Ed.2d 208 (2006), which involved a husband's challenge to a warrantless search that was conducted of his marital residence following his wife's consent. *See Plaintiffs' Mot.* 8:14-22.

**LINK TO DOCS. # 45 & 46   / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

      In sum, given the non-residential nature of the space, the public nature of the event held there, the relatively short period of time Plaintiffs spent on the premises, and the lack of a previous, significant connection between Plaintiffs and the warehouse, the Court concludes as a matter of law that all seven Plaintiffs lacked a reasonable expectation of privacy in the space. Because Plaintiffs lacked a reasonable expectation of privacy in the warehouse, they are therefore barred from challenging the officers' warrantless entry into the warehouse as an unlawful search.

      Resolution of this issue is no different under California law.  As California courts and the Ninth Circuit have both recognized, the language of Article I, Section 13 of the California constitution "indicates that the right to be free from unreasonable searches under Art. I § 13 of the California constitution parallels the Fourth Amendment inquiry into the reasonableness of a search."  *Sanchez v. County of San Diego*, 464 F.3d 916, 928-29 (9th Cir. 2006) (*citing Smith v. Los Angeles County Bd. of Supervisors,* 104 Cal. App. 4th 1104, 128 Cal. Rptr. 2d 700 (2002)). Moreover, in arguing that the California constitution provides a broader standing rules for challenging a warrantless entry, Plaintiffs rely on cases that are either inapposite, *see, e.g., Gerawan Farming, Inc. v. Veneman*, 85 Cal. Rptr. 2d 598, 609 (1999) (recognizing a distinction between the First Amendment and the liberty of speech clause in the California constitution with respect to expressive activity on the premises of large private shopping centers), or actually contravene Plaintiffs' position, *see, e.g., In re Lance W.*, 37 Cal.3d 873, 896 -897, 210 Cal. Rptr. 631 (1985) (holding a court may exclude the evidence on the basis of California law only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment)).  *Plaintiffs' Reply* 8:19-27.  Accordingly, the Court rejects Plaintiffs' contention that California law provides separate and independent grounds for challenging the officers' warrantless entry.

      Thus, for the foregoing reasons, Defendants' motion is hereby GRANTED with respect to this claim; Plaintiffs' request for summary adjudication that the warrantless entry violated Plaintiffs Cortez's and Holliday's constitutional rights is therefore DENIED.  Accordingly, the Court need not address whether exigent circumstances justified entry as presented in Plaintiffs' motion.

      2.    <u>Investigatory Detention and Pat-down Search of Plaintiffs</u>

      Plaintiffs also move for partial summary judgment on their claim that Defendants acted unlawfully in detaining Plaintiffs and subjecting them to pat-down searches outside of the

**LINK TO DOCS. # 45 & 46   / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

warehouse. *Plaintiffs' Mot.* 8:23-10:1. Defendants dispute Plaintiffs' claim that they acted unreasonably with respect to the six plaintiffs who were subjected to the pat-down search. *Defendants' Opp'n* 6:23-8:10. In addition, Defendants move for summary adjudication with respect to Plaintiff Cortez's search and seizure claim on grounds that Cortez's conviction under Cal. Penal Code. § 415 bars his Section 1983 claim under the Supreme Court's holding in *Heck v. Humphery.* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *see Defendants' Mot.* 7:4-18.

>   a.   *Plaintiff Cortez's Search and Seizure Claim*

First, the Court will address the narrower issue regarding Plaintiff Cortez's § 1983 claim based on an unlawful search and seizure. After attempting to prevent the officers from entering the warehouse, *see PUF* ¶ 45, Cortez was handcuffed and escorted out of the warehouse. *Cho Depo.* 104:10-105:15; *Cortez Depo.* 41:10-42:24; 47:11-48:12. As Cortez was in the back of the police car at the time of the field show-up, he was not subjected to the pat-down search like the other six plaintiffs. *PUF* ¶ 77. Cortez subsequently pled guilty to an infraction under California Penal Code § 415 based on his conduct during this encounter with Defendants. *Defendants' Request for Judicial Notice,* Ex. 1 (Dkt. # 45-2 (Nov. 23, 2010)); *Cortez Depo.* 13:4-15:6; *Flynn Decl.* ¶ 27.

In moving for partial summary judgment, Defendants contend that Cortez's Section 1983 claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court examined whether a state prisoner could challenge the constitutionality of his conviction in a Section 1983 damages suit. Heck filed a Section 1983 action based upon allegedly unconstitutional investigatory practices undertaken by the police and prosecutors. *Id.* at 479. In holding that Heck's Section 1983 action was not cognizable, the Court stated that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

 *Id.* at 486-87. The Court further directed district courts to consider:

LINK TO DOCS. # 45 & 46  / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487. Plaintiffs argue that *Heck* does not operate as a bar to Section 1983 actions where a plaintiff cannot file a habeas petition or expunge the conviction under Cal. Penal Code § 1203.4. *Plaintiffs' Opp'n* 3:26-4:4. They thus contend that *Heck* is inapplicable here because Cortez could not obtain habeas relief for his infraction. *Id.* 4:19-5:24.

The Court disagrees, however, for the following reasons. First, although Cortez's offense was an infraction, a right of direct appeal nonetheless exists for infraction convictions under Cal. Penal Code § 1466. Here, not only is there no evidence that Cortez appealed his conviction, he actually pled guilty to the offense. *See Cortez Depo.* 13:4-15:6. Second, to the extent Plaintiffs assert that *Heck* does not apply based on Cortez's attempt to expunge his § 415 offense, *see Plaintiffs' Additional Purported Undisputed Facts* ¶ 28 (Dkt. # 54 (Dec. 13, 2010)), the Court notes that a petition for expungement under California Penal Code Section 1203.4 does not nullify a conviction, and thus does not negate the operation of the *Heck* doctrine to bar a plaintiff's Section 1983 claim. *See Campos v. City of Merced*, 709 F. Supp. 2d 944, 961 (E.D. Cal., 2010) (holding that the plaintiff's state conviction under Cal. Penal Code § 415(1) barred his claims regarding his arrest or probable cause related thereto under *Heck v. Humphrey* where Plaintiff had pled no contest to a violation of California Penal Code § 415(1), but moved for dismissal pursuant to California Penal Code § 1203.4).

Likewise, the Court is not persuaded that *Heck* is inapplicable because success in Cortez's civil rights claim would not "necessarily demonstrate the invalidity of the conviction." *Plaintiffs' Opp'n* 4:20-21 (*citing Heck*, 512 U.S. at 481). Not only has this position been rejected by other courts in this district, *see, e.g., Campos*, 709 F. Supp. 2d at 961; *cf. Radwan v. County of Orange*, No. SACV 08-0786 AG, 2010 WL 3293354, *4 (C.D. Cal., Aug. 18, 2010) (holding that *Heck* barred the plaintiff's claim based on his initial investigatory detention, because success on the claim implied the invalidity of the plaintiff's conviction for marijuana possession), it is further discredited by the *Heck* opinion itself. There, as an example of a

LINK TO DOCS. # 45 & 46  / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

Section 1983 action whose unlawfulness would render a conviction or sentence invalid, the Supreme Court offered the following fact pattern:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest….He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.

*Heck*, 512 U.S. at 487 n.6. Then, explaining that "[i]n order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted[,]" the Court declared that "[r]egardless of the state law concerning res judicata, [ ] the § 1983 action will not lie." *Id.* This example, although dicta, is nonetheless instructive given its factual similarities to the case at hand.

Thus, for the foregoing reasons, the Court finds that *Heck* bars Plaintiff Cortez's Section 1983 cause of action with respect to his search and seizure claims. Defendants' motion for summary adjudication with respect to this issue is therefore GRANTED.

> b. *Search & Seizure Claim of Remaining Plaintiffs (Lyall, Jones, Becerra, Costanza-Chock, Holliday and Wood)*

Plaintiffs' moving papers argue that the Court should grant summary judgment on their claim that Defendants acted unreasonably in detaining Plaintiffs outside the warehouse because "[n]o Plaintiff matched the [alleged beer theft] suspects' description." *Plaintiffs' Mot.* 9:2-4. Relatedly, Plaintiffs contend that subjecting them to pat-down searches was unlawful because the officers lacked reasonable suspicion or probable cause to believe that any Plaintiff was armed or dangerous. *Id.* 9:10-12. The Court, however, disagrees that summary adjudication of this claim is appropriate.

The Fourth Amendment's protection against unreasonable searches and seizures by the government extends to brief investigatory stops of persons that fall short of traditional arrest. *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009). In such cases, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that

LINK TO DOCS. # 45 & 46   / O
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonable suspicion standard under *Terry v. Ohio* is less demanding than the showing required for probable cause. *Arvizu,* 534 U.S. at 273; *Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002). To satisfy this standard, an officer must be able to articulate facts creating grounds to suspect that criminal activity "may be afoot." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Hartz,* 458 F.3d 1011, 1017 (9th Cir. 2006). Here, as the parties do not dispute that a seizure occurred for Fourth Amendment purposes when Sergeant Ross ordered Plaintiffs to exit the warehouse and submit to a pat-down search, the Court will evaluate the constitutionality of Defendants' conduct by considering the totality of the circumstances at that point. *See Sokolow,* 490 U.S. at 7; *Ramirez,* 560 F.3d at 1021.

The Court is unwilling to find, as matter of law, that the officers acted unlawfully in detaining Plaintiffs because none of the Plaintiffs "matched" the description of the theft suspects. Nor is the Court persuaded that there is no genuine issue of fact regarding whether the officers acted reasonably in subjecting Plaintiffs to a pat-down search for weapons. To the contrary, the record reveals material factual discrepancies regarding whether the officers had reasonable suspicion based on specific, articulable facts to justify the pat-down search of Plaintiffs.

For instance, while the parties do not dispute that Sgt. Ross "wanted the attendees to be subjected to a field-show up because of the [911] radio call and because the officers told him they had seen people matching the description of the theft suspects." *PUF* ¶ 64, Defendants contest Plaintiffs' assertion that the officers admitted to detaining the attendees "because 'most' partygoers' clothing 'matched the clothing descriptions of the suspects, i.e. rocker type.'"[7] *PUF*

---

[7] The Court notes that the mere fact that Plaintiffs differed from the alleged beer theft suspects in terms of their race and gender does not make the officers' conduct per se unlawful under the Fourth Amendment. *See Los Angeles County, California v. Rettele*, 550 U.S. 609, 127 S.Ct. 1989 (2007) (per curiam) (holding, on a grant of certiorari, that law enforcement officers acted reasonably for Fourth Amendment purposes where they ordered naked residents out of their bed and held them at gunpoint for one to two minutes, while they verified that no weapons were present and that other persons were not close by; although the residents were Caucasian, and the criminal suspects were African-American, the presence of some Caucasians in the residence did not eliminate the possibility that the suspects lived there as well).

**LINK TO DOCS. # 45 & 46 / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

¶ 78; *see Ross Depo.*103:23-104:7. Defendants further argue that the detention and pat-down search were reasonable because "(1) the crowd appeared to be working together to force the officers away, (2) the officers could not tell who in the warehouse might not [be] part of the hostilities [sic], and (3) the theft/vandalism-suspects had enough time to pass any weapons or items that could be used as weapons to others in the crowd." *Defendants' Opp'n* 6:1-5. Despite Plaintiffs' averments that the attendees cooperated with the officers, Defendants point out that some attendees remained hidden inside the warehouse after everyone had been ordered out, including Plaintiff Holliday, who hid on the roof until he was eventually discovered and escorted outside. *Id.* 7:17-19; *PUF* ¶ 73.

In addition, there is a genuine issue of material fact as to whether the officers believed that Plaintiffs were armed and/or dangerous. Although Plaintiffs cite some evidence indicating that the officers were not aware that anyone was armed, *see PUF* ¶ 88; *Cho Depo.* 132:2-9, *Flynn Decl.* Ex. F, Defendants point to deposition testimony of Sergeant Ross, who stated that that "[the officers] did have information to believe that they were or could be dangerous more so than armed." *Ross Depo.*(*Flynn Decl.,* Ex. F) 36:4-18 (referencing the "board or the piece of wood that was knocked over on the officers head"); *see also Cervantes IA Interview,* Ex. N 17:12-18:12. Similarly, Officer Cervantes testified that:

> Based on [Plaintiffs'] aggressive manner toward us, refusal to back away when they were taken into custody, also, the fact that a crime had occurred and most of the individuals matched the clothing description, we were outnumbered, so many indications that I feared for my safety and they could possibly be armed. Whether or not there was mention of a weapon used, you know, for safety reasons, a pat-down was conducted.

*Cervantes Depo.,*149:10-18 (Dkt. # 53-5). The Court notes that similar facts have been held to support a finding of reasonable suspicion. *See, e.g., U.S. v. Mattarolo*, 209 F.3d 1153 (9th Cir. 2000) (officer's investigatory detention of defendant was justified by reasonable suspicion where the circumstances, including time of night, neighborhood in which stop occurred, officer's personal familiarity with recent criminal activity in that neighborhood, and fact that truck was leaving construction site with crate at time no deliveries or pickups could reasonably be expected, were sufficient to cause experienced officer to reasonably conclude that criminal activity might be in progress); *U.S. v. Johnson*, 581 F.3d 994 (9th Cir. 2009) (where behavior of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES - GENERAL

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

defendant and his associates provided reasonable suspicion that they were planning a bank robbery, officers were justified in patting defendant down for weapons; suspects outnumbered the officers and the frisk of one of defendant's associates revealed a weapon).

Thus, although Plaintiffs assert that the officers lacked any reasonable suspicion to detain Plaintiffs and conduct a pat-down search, Defendants present evidence indicating that the officers' conduct may have been justified, namely (1) that the suspect vehicle in a alleged theft/vandalism investigation was located nearby the warehouse (*Cho Decl.* ¶ 2; *PUF* ¶ 34); (2) that Plaintiffs' (and other attendees') engaged in anti-police hostility, aggressive behavior, and attempts to hamper the officers' investigation, (*PUF* ¶¶ 45,46; *DUF* ¶¶ 122-25, 127-28; *Ross Depo.* 48:9-49:6); and (3) the fact that the officers were outnumbered by the large crowd (*PUF* ¶ 56).  Therefore, the Court finds there is a genuine issue of disputed fact as to whether Defendants' detention and pat-down search of Plaintiffs was justified by reasonable suspicion.

Accordingly, Plaintiffs' motion for summary adjudication regarding the investigatory detention and pat-down searches is DENIED.

> 3. Supervisory Liability Claim Against Defendants Police Chief Bratton, and Officers Guerra and Kang

Defendants also assert that because Plaintiffs have failed to adduce sufficient evidence to proceed against Defendant LAPD Police Chief William Bratton, as well as Officers Guerra and Kang, these Defendants are entitled to summary adjudication in their favor.  *Defendants' Mot.* 6:27-7:3.  Because Plaintiffs do not contest this claim with respect to Defendants Guerra and Kang, the Court GRANTS Defendants' motion for partial summary judgment with respect to those two Defendants and DISMISSES Officers Guerra and Kang from this action with prejudice.

Plaintiffs do, however, challenge Defendants' contention that there is insufficient evidence to proceed against Defendant Police Chief William Bratton ("Bratton").  Specifically, Plaintiffs cite Bratton's failure to address the "obvious illegality of the officers' conduct" by dismissing as "unfounded" a written complaint Plaintiffs submitted regarding the incident. *Plaintiffs' Opp'n* 2:28-3:6 (*citing Plaintiffs Statement of Additional Purported Undisputed Facts,* ¶¶ 29-34 (Dkt. #54); *Flynn Decl.*¶ 11, Exs. I, J).  As explained below, the Court disagrees that this action suffices to hold Bratton personally liable under Section 1983.

**LINK TO DOCS. # 45 & 46 / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

"Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (internal citation omitted). A supervisor such as Chief Bratton, however, can be held liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation[;] or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal citation omitted). If Defendants Cho, Cervantes, and/or Ross engaged in an unlawful search and/or seizure, whether Chief Bratton is liable as a supervisor depends upon whether he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* (internal citation omitted).

Courts have found a requisite causal connection between a supervisor's wrongful conduct and the underlying constitutional violation in a variety of circumstances, such as where the evidence showed (1) that the supervisor authorized or approved practices that caused injury, *see, e.g., Redman v. County of San Diego,* 942 F.2d 1435, 1147-48 (9th Cir. 1991); (2) that the supervisor performed inadequate training, *see, e.g., Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007); (3) that the supervisor acquiesced in longstanding policy, *see, e.g., Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 894 (9th Cir. 1990); or (4) that the supervisor condoned actions of subordinates, *see, e.g., Blankenhorn v. City of Orange*, 485 F.3d 463, 485-86 (9th Cir. 2007) (holding genuine issues of material fact existed as to whether police chief knowingly condoned and ratified actions by an officer that he reasonably should have known would result in officer's use of excessive force; chief approved officer's personnel evaluations despite numerous complaints against the officer for use of excessive force).

Supervisory liability under Section 1983 cannot, however, be based on an allegation that an individual merely ratified a subordinate's decision. *See Williams v. City of Oakland,* No. C-06-00303 EDL, 2008 WL 268985 (N.D. Cal., Jan. 30, 2008) ("A policymaker's deferential review of a subordinate's discretionary decision is not the basis for Section 1983 liability, unless a subordinate's decision is cast in the form of a policy statement and expressly approved by a policymaker or if a series of decisions by a subordinate official show a custom of which a supervisor must have been aware.") (*citing Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir.1992)); *see also Estate of Abdollahi v. County of Sacramento,* 405 F.Supp.2d 1194, 1210-11

LINK TO DOCS. # 45 & 46  / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

(E.D. Cal. 2005) (no triable issue of fact as to the individual liability of a sheriff based solely on the failure to discipline; plaintiffs failed to present evidence of "significant personal contact and ratification").

  Here, to substantiate their claim regarding Chief Bratton's supervisory liability, Plaintiffs rely heavily on two cases: *Watkins* and *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir. 1991).  In neither, though, was the plaintiff's evidence of the chief's misconduct limited to a single after-the-fact investigation into a subordinate officer's alleged violation.  For instance, in *Watkins*, a Section 1983 plaintiff seeking damages for injuries caused by a police dog during his arrest brought an excessive force claim against the officer who released the dog, and sought to hold the Oakland Police Chief Samuels liable in his supervisory capacity.;14561;14561 *Watkins*, 145 F.3d at 1093. Reasoning that a jury could hold Samuels liable in a supervisory capacity if it were to find the officer used excessive force, the court affirmed the district court's denial of qualified immunity to Chief Samuels on summary judgment.  *Id.* at 1094.   This holding was based on evidence that Chief Samuels signed an internal affairs report dismissing Watkins's complaint against the officer despite (1) evidence of excessive force during Watkins's arrest, (2) "evidence of [the officer's] involvement in *other* police dog bite incidents, and (3) "evidence of *numerous injuries* to suspects apprehended by the use of police dogs."  *Id.* (emphasis added).

  Likewise, in *Larez,* the Ninth Circuit held there was no plain error in a jury verdict finding Los Angeles Chief of Police Daryl Gates liable for his officers' use of excessive force. *Larez,* 946 F.2d at 646.  In addition to presenting evidence that Gates personally dismissed his excessive force complaint against the officers who searched his house, Larez called an expert witness who testified that Chief Gates should have disciplined the officers and established new procedures to avoid future similar incidents.  *Id.* at 635-36. The expert further testified that, based on a two-year comparative study he had conducted, Los Angeles police officers almost never received discipline as a result of citizens' complaints.  *Id.*  Based upon this evidence, the court concluded that the jury could have found Chief Gates "condoned, ratified, and encouraged excessive use of force" among the officers he supervised, and thereby caused Larez's constitutional violations.  *Id.* at 646.

  Here, not only do Plaintiffs fail to cite any authority for the proposition that a police chief's failure to discipline the officers for misconduct in response to one complaint is sufficient to establish supervisory liability under Section 1983, Plaintiffs fail to present evidence, arguments, or even *allegations* that Bratton "set in motion a series of acts by others, or

**LINK TO DOCS. # 45 & 46   / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Watkins*, 145 F.3d at 1093. Thus, absent evidence of culpable inaction that caused or set in motion the alleged constitutional violations suffered by Plaintiffs, the Court finds that Plaintiffs cannot establish supervisory liability against Chief Bratton under Section 1983.

Accordingly, Defendants' motion for summary adjudication is also GRANTED with respect to Defendant Bratton.

   4.  Municipality Liability Under Section 1983

Having addressed the Section 1983 claims against the individual Defendants, the Court now turns to Plaintiffs' Section 1983 claim against the entity Defendants, the City of Los Angeles and LAPD. As the Supreme Court has recognized, a municipality such as a city can be held liable for a constitutional violation under Section 1983 only if the violation results from the municipality's official policies or customs. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

In moving for partial summary judgment, Plaintiffs argue that the entity Defendants are liable under *Monell* because they "*admit* that the entries into the artist space, and subsequent detentions and searches of Plaintiffs, were in accordance with these defendants' policies and practices." *Plaintiffs' Mot.* 10:4-21 (*citing PUF* ¶ 17). This assertion, however, is not enough to warrant summary adjudication in Plaintiffs' favor.

As the Ninth Circuit has recognized, "[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). A single constitutional deprivation can constitute an official policy for which a municipality can be held liable in certain circumstances, for instance where: (1) the person causing the violation has "final policymaking authority," *see id*. at 1235-36; (2) the person causing the violation is a subordinate but his or her action is "ratified" by one with final policymaking authority, *see id*. at 1238; or (3) where the person causing the violation is a

LINK TO DOCS. # 45 & 46 / O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

subordinate, but one with final policymaking authority is "deliberately indifferent" to the subordinate's action, *see id.* at 1240.

Here, however, Plaintiffs present no evidence to suggest that any such circumstances are present in this case. The Court further notes that Plaintiffs' reliance on Defendants' purported admission that the officers acted in conformance with LAPD search and seizure policy is not sufficient to warrant summary judgment – particularly considering deposition testimony that the policies at issue "merely track the applicable federal and California law." *Cho Decl.* ¶ 14, Ex. 6; *Defendants' Opp'n* 9:27-28. That the officers believed their conduct was consistent with internal LAPD policies does not automatically engender Section 1983 liability, especially where Plaintiffs have provided no evidence of a policy followed by Defendants which was unconstitutional on its face. Thus, based upon the foregoing, the Court DENIES Plaintiffs' request for summary adjudication on its claim that the entity Defendants are liable under Section 1983 based on an alleged violation of Plaintiffs' Fourth Amendment rights.

    B.    <u>State Law Claim Under Cal. Civ. Code § 52.1</u>

Plaintiffs' final cause of action alleged in this action is brought under California Civil Code § 52.1. This section authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." Cal. Civ. Code § 52.1(a),(b); *see also Jones v. Kmart Corp.,* 17 Cal. 4th 329, 331, 70 Cal. Rptr. 2d 844 (1998). Plaintiffs' § 52.1 cause of action is predicated on violations of the Fourth Amendment, as well as the corresponding provision in the California Constitution. With respect to the putative federal basis for this cause of action, for reasons previously discussed, the Court holds that a genuine factual issue exists regarding the predicate constitutional violation.

Accordingly, the Court DENIES Plaintiffs' motion for summary adjudication on its claim that Plaintiffs are entitled to recover damages from Defendants City of Los Angeles and the Los Angeles Police Department for injuries proximately caused by the officers' violations of Plaintiffs' state and federal constitutional rights pursuant to Cal. Civ. Code § 52.1.

IV.    <u>Conclusion</u>

For the foregoing reasons,

**LINK TO DOCS. # 45 & 46 / O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7353 PSG (MANx) | Date | January 6, 2011 |
|---|---|---|---|
| Title | James Duff Lyall, *et al.* v. City of Los Angeles, *et al.* | | |

- Defendants' request for summary adjudication on their claim that Plaintiffs lack standing to challenge the alleged unlawfulness of the officers' warrantless entry is GRANTED;

- Defendants' request for summary adjudication on their claim that Javier Cortez's conviction precludes him from challenging the detention and search incident to his arrest is GRANTED;

- Defendants' request for summary adjudication with respect to Defendants Bratton, Kang, and Guerra is GRANTED; these Defendants are DISMISSED with prejudice from this action;

- Plaintiffs' request for summary adjudication on their claim that Defendants' warrantless entry into the warehouse violated Plaintiffs Cortez and Holliday's Fourth Amendment rights is DENIED;

- Plaintiffs' request for summary adjudication on their claim that Defendants acted unlawfully in detaining Plaintiffs and conducting a pat-down search is DENIED;

- Plaintiffs' request for summary adjudication on their claim that the LAPD Officers' entry into the artists' space and seizures of Plaintiffs were pursuant to a custom, policy and/or practice of the City of Los Angeles and the LAPD Los Angeles Police Department is DENIED;

- Plaintiffs' request for summary adjudication on their claim that they are entitled to recover from Defendants City of Los Angeles and the Los Angeles Police Department damages proximately caused by the officers' violations of Plaintiffs' state and federal constitutional rights under Cal. Civ. Code § 52.1 is also DENIED.

**IT IS SO ORDERED.**